UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE SWANK,                  Case No. 18-13353

    Plaintiff,                           Stephanie Dawkins Davis
v.                                        United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)**

**I.    PROCEDURAL HISTORY**

      A.     Proceedings in this Court

On October 26, 2018, plaintiff Michelle Swank filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (ECF No. 1). This matter is before the Court on cross-motions for summary judgment. (ECF Nos. 11, 13).

      B.     Administrative Proceedings

Swank filed applications for a period of disability, disability insurance benefits, and supplemental security income on November 30, 2015, alleging

1

disability beginning January 1, 2014. (Tr. 18).[1] The claims were initially disapproved by the Commissioner on March 31, 2016. (Tr. 18). Swank requested a hearing, and on September 6, 2017, she appeared with counsel before Administrative Law Judge ("ALJ") Amy L. Rosenberg, who considered the case de novo. (Tr. 36-65). In a decision dated January 18, 2018, the ALJ found that Swank was not disabled. (Tr. 18-31). The ALJ's decision became the final decision of the Commissioner on August 21, 2018, when the Appeals Council denied Swank's request for review. (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

## II.   FACTUAL BACKGROUND

Swank, born in 1977, was 36 years old on the alleged disability onset date. (Tr. 25, 29). At the time of the hearing, she was 40 years old and lived alone. (Tr. 29, 41). Swank has a GED and past relevant work as an auto detailer and a general inspector. (Tr. 29, 42). Swank alleges that she stopped working and is disabled because of neck pain, fibromyalgia, autoimmune disease, neuropathy, anxiety, depression, bipolar disorder, post-traumatic stress disorder ("PTSD"), chronic obstructive pulmonary disease ("COPD"), degenerative disc disease, spinal

---

[1] The Administrative Record appears on the docket at entry number 8. All references to the same are identified as "Tr."

spondylosis, neuroforaminal narrowing, osteoarthritis, hip spurs, stomach issues, acid reflux, ulcers, and high blood pressure. (Tr. 236-37).

The ALJ applied the five-step disability analysis and found at step one that although Swank worked after the alleged onset date of January 1, 2014, the work activity did not rise to the level of substantial gainful activity. (Tr. 20). At step two, the ALJ found that Swank had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; partial thickness tear, tendinopathy, and osteoarthritis of the left shoulder; carpal tunnel syndrome; obsessive compulsive disorder ("OCD"); mood disorder; PTSD; major depressive disorder; and generalized anxiety disorder. (Tr. 21). The ALJ also found that Swank's mild mitral and tricuspid regurgitation, mild pulmonary hypertension, gastroesophageal reflux disease ("GERD"), and insomnia were non-severe impairments, and that Swank's fibromyalgia did not qualify as a medically determinable impairment. (TR 21-22). At step three, the ALJ determined that Swank's impairments did not singly or in combination meet or medically equal one of the listings in the regulations. (Tr. 22-24).

Thereafter, the ALJ assessed Swank's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she needs a sit/stand

3

> option allowing her to work in either a seated or standing position, with changes in position at will, 30 to 60 minutes. She can occasionally climb ramps or stairs, but cannot climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently reach, handle, finger and feel. She should not work at unprotected heights and should not operate dangerous machinery. She can understand, remember, and carry out simple, routine tasks and can make simple work-related decisions. She can tolerate occasional interaction with supervisors, coworkers, and the public.

(Tr. 24-29). At step four, the ALJ found that Swank was unable to perform any past relevant work. (Tr. 29). At step five, the ALJ denied Swank benefits because she found that there were jobs that exist in significant numbers in the national economy that Swank could perform. (Tr. 30).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (An "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal quotation marks omitted) (quoting *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

  B. <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the claimant is engaged in significant gainful activity; (2) the claimant has any severe impairment(s); (3) the claimant's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the claimant can perform. *Id*. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

Swank contends that (1) "the ALJ's decision did not properly assess the medical evidence presented in this case in support of the Claimant's numerous medical difficulties;" and (2) "the ALJ's determination regarding credibility and evidence cited in support of those determinations failed to properly take into account all the evidence regarding Claimant's difficulties." Swank claims that the

9

ALJ's discussion regarding the diagnosis of fibromyalgia is of particular significance. (ECF No. 11, PageID.757.)

Swank's fairly non-specific and underdeveloped arguments are inadequate to demonstrate that reversible error has occurred. In fact, the ALJ's assessment of Swank's fibromyalgia is the only issue that is even partially developed by Swank in this matter. The "Argument" portion of Swank's twenty-five-page brief spans only two pages and primarily consists of perfunctory, over-generalized arguments and citations to law without any meaningful attempt at factual or legal analysis or citations to the record evidence. (*See* ECF No. 11, PageID.757-758.) "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* Therefore, to the extent that Swank purports to raise any issue other than the ALJ's assessment of her fibromyalgia, those issues are waived.[2]

---

[2] The Court notes that another court in this District recently warned Swank's counsel that his failure to cite evidence and develop arguments on his client's behalf is sanctionable and could lead to a referral to the Michigan Attorney Grievance Commission for investigation. *Getz v. Comm'r of Soc. Sec.*, No. 18-11625, 2019 WL 2710053, at *2-3 (E.D. Mich. June 10, 2019) (Stafford, M.J.), *report and recommendation adopted*, No. 2:18-cv-11625, 2019 WL 2647260 (E.D. Mich. June 27, 2019). Counsel filed Swank's Motion for Summary Judgment and brief in support before receiving the warning in *Getz*, however, counsel's failure to heed this warning in future filings may result in sanctions.

Social Security Ruling ("SSR") 12-2p provides guidance on how [the Commissioner will] develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how [the Commissioner will] evaluate [fibromyalgia] in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." *Titles II & XVI: Evaluation of Fibromyalgia,* SSR 12-2p, 2012 WL 3104869, at *1 (S.S.A. July 25, 2012). To establish a medically determinable impairment of fibromyalgia under SSR 12-2p, a claimant must have a positive diagnosis of fibromyalgia from an acceptable medical source and produce documented evidence consistent with that diagnosis that meets certain criteria, based on either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. *Id*. at *2. Relevant here are the 2010 ACR Criteria,[3] which require: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause the repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *Id*. at *3.

---

[3] Swank does not challenge the ALJ's assessment of her fibromyalgia under the 1990 ACR Criteria.

The ALJ assessed Swank's fibromyalgia under SSR 12-2p, in relevant part, as follows:

> In the instant case, the claimant does have a fibromyalgia diagnosis listed by her doctor (3F/54). There is no evidence in the record, however, that demonstrates that the claimant meets the 1990 or 2010 ACR criteria. . . .
>
> . . . The claimant does report widespread pain, so she meets that criterion. The 2010 ACR criteria also require documented evidence of repeated manifestations of six or more fibromyalgia symptoms, such as muscle pain, irritable bowel syndrome, fatigue, tiredness, cognitive or memory problems, headache, abdominal cramps, dizziness, insomnia, depression, and anxiety. The claimant does have reported muscle pain, depression, anxiety, and insomnia in the record; however, there is not repeated manifestations of other symptoms documented in the record. Therefore [s]he does not meet the 2010 ACR criteria. Moreover, her symptoms could be explained by other medically-determinable impairments established in the record, such as degenerative disc disease, carpal tunnel syndrome, depression, and anxiety. Since the claimant does not meet the criteria required by SSR 12-2p, I find the claimant's alleged fibromyalgia is not a medically determinable impairment.
>
> Despite my finding that fibromyalgia is not a medically-determinable impairment, I still fully considered the claimant's complaints of pain and other symptoms in determining her residual functional capacity.

(Tr. 21-22).

Swank argues that she does meet the 2010 ACR criteria. She says that "[t]here is history of widespread pain, manifestations of six or more signs including muscle pain, fatigue and tiredness, cognitive and memory problems,

muscle weakness, headaches, pain and cramps in the abdomen, numbness and tingling, dizziness, insomnia, waking unrefreshed, depression, anxiety disorder, nervousness, shortness of breath, and irritable bowel syndrome." (ECF No. 11, PageID.757). She also says that she has co-occurring conditions such as irritable bowel syndrome, depression, anxiety disorder, and GERD, and she argues that those conditions support a finding that she "suffers from a manifestations [sic] which support a determination of fibromyalgia." (ECF No. 11, PageID.757).

Swank makes these arguments without citing any record medical evidence to demonstrate that she actually suffers from all of these symptoms and conditions and that the symptoms manifest repeatedly, as is required under the 2010 ACR criteria. Notably, while Swank spends the majority of her brief providing a very thorough summary of the hearing testimony, her brief wholly fails to cite *any* record medical evidence in support of her appeal. The Court is under no obligation to scour the record for evidence to develop, support, or confirm Swank's arguments, and it will not do so here, particularly where she is represented by counsel. *See Deguise v. Comm'r of Soc. Sec.*, No. 12-10590, 2013 WL 1189967, at *7 (E.D. Mich. Feb. 19, 2013), *report and recommendation adopted*, No. 12-10590, 2013 WL 1187291 (E.D. Mich. Mar. 22, 2013) ("plaintiff cannot simply make the claim that the ALJ erred . . . , while leaving it to the Court to scour the record to support th[e] claim) (citing *McPherson*, *supra; Crocker v. Comm'r of*

*Soc. Sec.*, No. 1:08-CV-1091, 2010 WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.")).

On the other hand, the Commissioner cites and relies upon a host of record evidence in arguing that the ALJ properly determined that Swank did not meet the 2010 ACR criteria. (ECF No. 13, PageID.775-778). The Commissioner notes the ALJ's finding that Swank had repeated manifestations of muscle pain, depression, anxiety, and insomnia but argues that the record lacks repeated documentation of Swank's alleged fatigue and tiredness, cognitive and memory problems, headaches, dizziness, shortness of breath, abdominal pain and cramps, irritable bowel syndrome, or GERD. The Commissioner also points out the ALJ's finding that those symptoms could be explained by Swank's other conditions.

With regard to fatigue and tiredness, the Commissioner acknowledges Swank's assertion in her February 2016 Function Report that she is tired and lethargic most days. (ECF No. 13, PageID.775 (citing Tr. 245)). But the Commissioner asserts that the first time Swank complained of fatigue to a medical provider was in May 2015, over a year after the alleged disability onset date.[4] (ECF No. 13, PageID.775 (citing Tr. 665)). At the May 2015 appointment and a

---

[4] Swank reported fatigue in May 2013, prior to the alleged onset date, which the treating provider associated with Swank's depression. (Tr. 386.)

14

July 2015 follow-up appointment, Swank's cardiologist, Mumtaz Memon, M.D. assessed Swank's fatigue in conjunction with her snoring, lack of energy, and increased daytime somnolence as suggestive of sleep apnea. (ECF No. 13, PageID.775-776 (citing Tr. 662, 665)). There is no evidence that sleep apnea was ruled out. The Commissioner notes that the next medically documented complaint of fatigue was a year and a half later in December 2016, at a preoperative cardiac evaluation. (ECF No. 13, PageID.776 (citing Tr. 658)). At that appointment, cardiologist Elizabeth Pielsticker, M.D. attributed Swank's symptoms of fatigue, chest pressure, shortness of breath, and palpitations to stress and/or low potassium levels. (Tr. 659). Swank complained of fatigue and multiple cardiac symptoms again in June 2017, which Dr. Pielsticker attributed to anxiety. (Tr. 655-56.) The Commissioner contends that where fatigue is one of the hallmark symptoms of fibromyalgia, Swank's intermittent reports are not the type of repeated manifestation that one would reasonably expect under the ruling. (ECF No. 13, PageID.776).

Regarding Swank's alleged cognitive and memory problems, the Commissioner acknowledges Swank's own testimony that she is "confused a lot," but points out that the evidence reflects normal memory and concentration, as discussed by the ALJ. (ECF No. 13, PageID.776 (citing Tr. 23, 48, 363, 367, 369, 373, 647)). For instance, the ALJ discussed April 2014 and February 2016

15

examinations at which Swank was noted to have normal memory, concentration, attention, thought process, speech, and fund of knowledge. (Tr. 23, 28 (citing Tr. 363, 647)). The ALJ also noted that throughout the record, Swank was demonstrably able to provide information to, follow instructions from, and respond to questions from her medical providers. (Tr. 23). The ALJ further noted Swank's ability to answer questions appropriately at the hearing without difficulty understanding and attending to the content of the hearing. (Tr. 23-24).

Next, the Commissioner acknowledges that the record contains complaints of dizziness and shortness of breath but asserts that most of the treatment notes suggest that those symptoms were caused by Swank's anxiety. (ECF No. 13, PageID.777-778). In fact, in January 2014, Swank presented at the emergency room with shortness of breath and dizziness; she was diagnosed with bronchitis. (Tr. 444-50). In March 2015, Swank presented at the emergency room with chest pain, palpitations, nausea, dizziness, and shortness of breath. She explained that she had similar symptoms in the past due to anxiety and admitted that she had a stressful day. (Tr. 429-38). Swank was also positive for shortness of breath at a July 2015 visit to her cardiologist, but negative in February, September, October, and December 2015. (Tr. 332, 335, 338, 356, 662-63). In February 2016, Swank reported that she had intermittent panic attacks, during which she experienced shortness of breath and loss of focus, among other things. (Tr. 645). Swank also

reported shortness of breath in December 2016, which her cardiologist felt was provoked by stress and a result of low potassium levels, and in June 2017, which the cardiologist attributed to anxiety. (Tr. 655-56, 658-59).

Additionally, the Commissioner points out that Swank only reported headaches in March 2015 and January 2016, the latter of which were caused by medication. (ECF No. 13, PageID.777 (citing Tr. 436, 477, 528, 532, 534, 543, 548)). Swank denied headaches in February and September 2015. (ECF No. 13, PageID.777 (citing Tr. 338, 355)). The Commissioner also asserts that there is only one reference to GERD in the medical record and no evidence that Swank had irritable bowel syndrome or suffered from abdominal pain/cramps. (ECF No. 13, PageID.778 (citing Tr. 680-81)).

Swank offers no reply to the Commissioner's argument and the evidence presented. It is Swank who "bears the burden of proving the existence and severity of limitations caused by her impairments" through step four of the sequential evaluation process. *Jones*, 336 F.3d at 474. Considering Swank's underdeveloped and largely unsupported argument, the Commissioner's well-supported counterargument, and an independent review of the record, the Court finds that Swank has not carried her burden of establishing fibromyalgia as a medically determinable impairment. Notably, even if Swank's shortness of breath and fatigue qualified as "repeated manifestations of symptoms" under the 2010 ACR

Criteria, the evidence cited above suggests that those symptoms are caused by other disorders, like depression, anxiety, and sleep apnea. The ALJ stated as much in her decision (*see* Tr. 22), and there is no evidence that those other disorders have been excluded, as is also required under the 2010 ACR Criteria. Swank has failed to demonstrate any error committed by the ALJ in determining that her fibromyalgia does not meet the 2010 ACR Criteria and is therefore not a medically determinable impairment.

Moreover, despite finding that Swank's fibromyalgia was not a medically determinable impairment, the ALJ expressly indicated that she still fully considered Swank's symptoms and complaints of pain in assessing Swank's RFC. (Tr. 22). Swank does not challenge the ALJ's RFC assessment or indicate what additional functional limitations the ALJ should have included in her RFC to account for her fibromyalgia. Again, it is Swank's burden to prove that she has a more restrictive RFC than that assessed by the ALJ, *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)), and she has not done so.

Furthermore, as the ALJ noted, none of Swank's treating physicians provided a medical opinion regarding Swank's ability to perform work-related activities as a result of her fibromyalgia or any of her other conditions. (Tr. 28). Where no treating or examining source identifies functional limitations or indicates

that a claimant is disabled, an ALJ is entitled to rely on the findings of the state agency consultant. *Johnson v. Comm'r of Soc. Sec.*, No. 11-14644, 2013 WL 812081, at *6 (E.D. Mich. Feb. 12, 2013), *report and recommendation adopted*, 2013 WL 811788 (Mar. 5, 2013).

Here, the state-agency reviewing psychologist, Dr. Jerry Csokasy, Ph.D., and the state-agency reviewing physician, Dr. Thomas Chiambretti, DO, considered Swank's allegations and the medical records concerning fibromyalgia, found that Swank's fibromyalgia was a severe impairment, expressly considered Swank's fibromyalgia in assessing Swank's RFC, and determined that Swank was capable of performing a reduced range of unskilled, light work – a less restrictive RFC than that assessed by the ALJ. (Tr. 67-83, 85-101). The ALJ reviewed and accorded great weight to Dr. Csokasy's assessment of Swank's mental RFC and partial weight to Dr. Chiambretti's assessment of Swank's physical RFC, finding that the record developed at the hearing level rendered Swank more limited than Dr. Chiambretti opined. (Tr. 28).

Swank does not challenge the ALJ's assessment of Dr. Csokasy's or Dr. Chiambretti's opinions, so any such claim is waived. Presumably, Swank does not object to the ALJ's determination that she has less physical residual functional capacity than that assessed by Dr. Chiambretti. Regardless, the ALJ properly

relied on the opinions of the state-agency consultants, which constitute substantial evidence supporting the ALJ's decision.

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

**IT IS SO ORDERED**.

Date: March 9, 2020                         s/Stephanie Dawkins Davis
                                            Stephanie Dawkins Davis
                                            United States District Judge